Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| JORGE L. LÓPEZ DE AYALA<br><br>Apelante<br><br><br>v.<br><br><br>PEDRO M. ORTIZ BERRÍOS<br><br>Apelado | KLAN202300517 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil número:<br>K AC2015-1054<br><br>Sobre:<br>Sentencia Declaratoria; Disolución Corporativa |
|---|---|---|

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Rivera Marchand y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece la parte apelante, Jorge L. López de Ayala, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 12 de mayo de 2023, notificada el 17 del mismo mes y año. Mediante dicho dictamen, el foro primario decretó la disolución de la corporación *ADIESTRATE.COM, Inc.* y determinó que el dominio *adiestrate.com*, la marca del mismo nombre, la base de datos y la información que la configuran son activos de la mencionada corporación.

Junto a su recurso, la parte apelante presentó una *Moción en Auxilio de Jurisdicción,* la cual declaramos Ha Lugar mediante *Resolución* del 15 de junio de 2023.

Por los fundamentos que exponemos a continuación, dejamos sin efecto la paralización de los procedimientos y se confirma el dictamen apelado.

Número Identificador

SEN2024 _____

**I**

El 18 de noviembre de 2015, Jorge L. López de Ayala (López de Ayala o apelante) incoó una *Demanda* sobre sentencia declaratoria y disolución corporativa en contra de Pedro M. Ortiz Berríos (Ortiz Berríos o apelada).[1] En el aludido escrito, López de Ayala alegó que durante el año 2004 creó un sistema de adiestramiento en línea y adquirió los derechos del nombre *adiestrate.com.* Arguyó, además, que el sistema creado fue utilizado en conjunto a Ortiz Berríos para crear la corporación *ADIESTRATE.COM, Inc.* en el año 2008 para así ofrecer educación continua. Planteó que, como parte de lo convenido entre las partes, era dueño de un cincuenta y cinco por ciento (55%) de la corporación, mientras que Ortiz Berríos era dueño de un cuarenta y cinco por ciento (45%) de esta. De igual forma, expresó que el único activo de la corporación era la cuenta de banco comercial y que, debido a unas discrepancias habidas con Ortiz Berríos, el 5 de octubre de 2015 ambos socios sostuvieron una reunión en donde se discutió el plan de disolución de la corporación *ADIESTRATE.COM, Inc.* Argumentó que, debido a la negativa de Ortiz Berríos ante la propuesta de disolución corporativa, vino obligado a acudir al Tribunal de Primera Instancia a solicitar la disolución de *ADIESTRATE.COM, Inc.*

En respuesta, Ortiz Berríos presentó su *Contestación a demanda y reconvención* el 22 de febrero de 2016.[2] En esencia, negó los hechos alegados por López de Ayala en su escrito y alegó de manera afirmativa que el dominio de *adiestrate.com* le pertenece a la corporación y no a la parte apelante. Sostuvo que la entidad corporativa era quien realizaba los pagos de derechos del nombre del dominio y no López de Ayala. De igual forma, planteó de manera

---

[1] Apéndice del recurso, págs. 22-26.
[2] Íd., págs. 27-37.

afirmativa que la corporación *ADIESTRATE.COM, Inc.* era dueña de la marca *adiestrate.com,* la cual se encontraba inscrita a su favor ante el Registro de Marcas del Departamento de Estado. Respecto a los activos de la corporación, Ortiz Berríos arguyó afirmativamente que *ADIESTRATE.COM, Inc.* contaba con los siguientes activos:

> (i) la marca registrada ante el Registro de Marcas del Departamento de Estado de Puerto Rico, (ii) la plataforma tecnológica propiedad de la entidad corporativa [...], (iii) una base de datos con un archivo con más de 23,000 profesionales registrados , (iv) un archivo digital de las direcciones de correo electrónico de los miembros del Registro único de Abogados de Puerto Rico (RUA), (v) el archivo digital  de sobre  100 diferentes  cursos de educación continuada para diferentes profesionales de  Puerto Rico, (vi) contratos con sobre 40 autores asociados que proveen los cursos a través de ADIESTRATE.COM.

En su reconvención, Ortiz Berríos alegó que López de Ayala se encontraba realizando actos que llevarían a *ADIESTRATE.COM, Inc.* en menoscabo, por lo que le solicitó al foro primario que nombrara un administrador judicial.[3] Así mismo, solicitó que se dictara sentencia declaratoria imponiéndole total y absoluta responsabilidad en daños a López de Ayala por cualquier pérdida que pudiera experimentar la corporación.

El 20 de mayo de 2016, López de Ayala presentó su *Contestación a reconvención.*[4] En síntesis, negó los hechos planteados por Ortiz Berríos en su escrito y alegó afirmativamente que no era necesario nombrar un administrador judicial, pues la corporación se encontraba operando de manera normal. Arguyó, además, que no estaba apropiándose ilegalmente de propiedad, activos o derechos de *ADIESTRATE.COM, Inc.*

Luego de varios incidentes procesales, incluyendo la designación de un administrador judicial,[5] López de Ayala instó una

---

[3] Apéndice del recurso, págs. 34-37.
[4] Íd., págs. 38-41.
[5] Íd., págs. 48-49.

*Solicitud de sentencia sumaria parcial* el 1 de mayo de 2017.[6] En esencia, arguyó que procedía que se dictara sentencia sumaria a su favor, pues fue este quien escribió el *software* o programación de la plataforma tecnológica que permite el funcionamiento de *ADIESTRATE.COM, Inc.* y en ningún momento este ha transferido sus derechos de autor a Ortiz Berríos o a la corporación. De igual manera alegó que, conforme a las disposiciones de la Ley Núm. 164-2009, *Ley General de Corporaciones,* según enmendada, 14 LPRA sec. 3501 *et seq.,* procedía la disolución de *ADIESTRATE.COM, Inc.*

Por su parte, Ortiz Berríos presentó su *(i) Oposición a solicitud de sentencia sumaria del demandante-reconvenido y (ii) solicitud de sentencia sumaria* el 30 de mayo de 2017.[7] En el aludido escrito,

---

[6] Íd., págs. 50-78. Junto a esta moción, López de Ayala presentó los siguientes documentos: (1) Deposición de Jorge López de Ayala, con fecha del 2 de febrero del 2017; (2) Certificado de incorporación de Verónica Consulting, P.S.C., con fecha del 23 de octubre de 2003; (3) Deposición de Pedro Ortiz Berríos, con fecha de 1 del febrero de 2017; (4) Registro de Dominio adiestrate.com; (5) GoDaddy Domain Name Registration Agreement, revisado por última vez el 29 de noviembre de 2016; (6) Primeras páginas de adiestrate.com, con fechas del 29 de noviembre de 2004 y 13 de febrero de 2005; (7) Cuenta de Perfil de Paypal; (8) Correos electrónicos sobre Propuesta, con fechas del 29 de febrero de 2008, 3 de abril de 2008 y 13 de abril de 2008; (9)Recibos de GoDaddy, con fechas del 7 de marzo de 2008 y 17 de abril de 2017; (10) Carta del Colegio de Ingenieros y Agrimensores de Puerto Rico, con fecha del 29 de febrero de 2016; (11) Propuesta a Colegio de Ingenieros y Agrimensores de Puerto Rico, con fecha del 11 de abril de 2008; (12) Certificación del Colegio de Ingenieros y Agrimensores de Puerto Rico, con fecha del 9 de mayo de 2008; (13) Recibos de primeros cursos de Adiestrate.com, con fechas del 21 de mayo de 2008, 23 de mayo de 2008 y 2 de junio de 2008; (14) Certificado de Registro de Adiestrate.com, Inc., con fecha del 4 de junio de 2008; (15) Correo Electrónico sobre competencia EnterPRize, con fecha del 9 de octubre de 2009; (16) Convocatoria de reunión de Junta de Directores, con fecha de 18 de septiembre de 2015; (17) Minutas de Reunión de Adiestrate.com, con fecha del 13 de octubre de 2015; (18) *By Laws* de Adiestrate.com, con fecha del 3 de enero de 2019; (19) Planilla de Contribución sobre Ingresos de Corporaciones, con fecha del 13 de abril de 2016. Véase, Apéndice del recurso, págs. 79-203.

[7]Apéndice del recurso, págs. 204-227. Junto a esta moción, Ortiz Berríos presentó los siguientes documentos: (1) Certificado de Cancelación de Verónica Consulting, P.S.C., con fecha del 16 de abril de 2014; (2) Deposición de Pedro Ortiz Berríos, con fecha del 1 de febrero de 2017; (3) Moción en cumplimiento de orden presentada por López de Ayala, con fecha del 28 de octubre de 2016; (4) Deposición de Jorge López de Ayala, con fecha del 2 de febrero de 2017; (5) Contestación al primer pliego de interrogatorios, con fecha del 9 de enero de 2017; (6) Business Plan EnterPRize 2009, con fecha del 13 de noviembre de 2009; (7) *By-Laws* de ADIESTRATE.COM (Revisados), con fecha del 3 de enero de 2009; (8) Sección "Sobre nosotros" de ADIESTRATE.COM, con fecha del 16 de septiembre de 2008; (9) Sección de "Términos y Condiciones" de ADIESTRATE.COM, con fecha del 13 de febrero de 2011; (10) Sección de "Términos y Condiciones de Uso" de ADIESTRATE.COM, con fecha del 29 de mayo de 2017; (11) Contrato de Creación de Cursos y Restricción de Uso de Propiedad Intelectual, con fecha del 30 de abril de 2015; (12) Contestación a requerimiento de admisiones, con fecha del 9 de enero de 2017; (13) Registro de Marca de Adiestrate.com, con fecha del 16 de noviembre de 2010; (14) Certificado de Registro de Eduxys, LLC, con fecha del 9 de septiembre de 2015. Véase, Apéndice del recurso, págs. 228-337.

Ortiz Berríos alegó que la plataforma de tecnología que se encontraba en controversia le pertenecía a *ADIESTRATE.COM, Inc.*, pues además de estar compuesta de una programación original, esta trabajaba a base de datos que se habían recopilado a través de los años en que la corporación brindó sus servicios. Arguyó, además, que los datos que componen la plataforma en controversia están compuestos de información de clientes o potenciales clientes que accedían el portal de la corporación. Por lo que argumentó que toda esta información recopilada durante los años de servicios hace que esta base de datos pertenezca a *ADIESTRATE.COM, Inc.* y no a López de Ayala de manera privativa.

Respecto a la solicitud de disolución de la corporación hecha por la parte apelante, Ortiz Berríos alegó que no precedía en derecho, pues fue presentada de manera prematura y en contra de lo establecido en los *By-Laws* de *ADIESTRATE.COM, Inc.* En primer lugar, Ortiz Berríos expresó que el Tribunal de Primera Instancia había establecido que no atendería el asunto de la disolución de la corporación, si no que se enfocaría en los asuntos de la plataforma tecnológica de *ADIESTRATE.COM, Inc.* En segundo lugar, argumentó que los *By-Laws* de *ADIESTRATE.COM, Inc.* no le daban derecho a López de Ayala a tomar decisiones unilaterales sobre la disolución de la corporación. Además, arguyó que existían otras alternativas a la disolución.

Así las cosas, el 14 de junio de 2018 y reducida a escrito el 28 del mismo mes y año, el Tribunal de Primera Instancia emitió una *Resolución* en donde declaró No Ha Lugar la *Solicitud de sentencia sumaria parcial* presentada por López de Ayala y No Ha Lugar la *(i) Oposición a solicitud de sentencia sumaria del demandante-reconvenido y (ii) solicitud de sentencia sumaria*

promovida por Ortiz Berríos.[8] En síntesis, el foro primario razonó que no procedía dictar sentencia en carácter sumario, pues existían controversias respecto a los bienes pertenecientes a la corporación, sus activos y pasivos, a quién corresponde la titularidad de la plataforma mediante la cual se ofrecían los cursos en línea y los términos de inscripción del dominio a través de la plataforma *GoDaddy*. Del mismo modo, concluyó que debía traerse al pleito a *ADIESTRATE.COM, Inc.*, pues es una parte indispensable.

Luego de varios incidentes procesales, el 19 de septiembre de 2019, el Tribunal de Primera Instancia emitió una *Orden designando Comisionado Especial* en la cual se designó al licenciado Manuel Quilichini García como Comisionado Especial.[9] En el aludido escrito, el foro primario le encomendó al Comisionado Especial a recibir de la representación legal de las partes las controversias y asuntos pendientes para adjudicar, con el fin de que este las evaluara y emitiera recomendaciones al foro sentenciador sobre el curso que debía seguir el caso.

El 11 de febrero de 2019, el Comisionado Especial sometió su *Informe y recomendación del Comisionado Especial*.[10] Entre los asuntos que fueron discutidos en dicho informe, el Comisionado Especial indicó que el administrador judicial no había podido realizar sus labores debido a que López de Ayala no le ofreció acceso al servidor de *adiestrate.com* y a la cuenta de PayPal asociada a la cuenta.

En respuesta, el 19 de febrero de 2019, López de Ayala presentó una *Oposición a informe y recomendación del Comisionado Especial*.[11] En esencia, arguyó que la programación de *adiestrate.com* está íntimamente atada a su cuenta personal de

---

[8] Apéndice del recurso, págs. 378-399.
[9] Apéndice del recurso, págs. 447-449.
[10] Íd., págs. 450-453.
[11] Íd., págs. 454-466.

Paypal y que unir la cuenta de PayPal nueva significaría la creación de programación adicional. De igual forma, expresó que el Comisionado Especial pretendía que el apelante le entregara los códigos al administrador judicial y que se adiestrara a nuevo personal de manera que convertiría en académico cualquier planteamiento propietario que pudiera levantar.

Tras múltiples trámites procesales, el Tribunal de Primera Instancia emitió una *Acta-Resolución* el 18 de noviembre de 2021, reducida a escrito el 3 de diciembre del mismo año.[12] En el aludido dictamen el foro primario determinó que no poseía jurisdicción para dilucidar la titularidad de los derechos de autor, específicamente los relacionados a los libretos que forman parte de *adiestrate.com*, por tratarse de materia en la cual la legislación federal ocupa el campo. No obstante, estableció que sí poseía jurisdicción para dilucidar si el nombre del dominio de *adiestrate.com* pertenecía o no a la corporación.

Celebrada la vista en su fondo el 9 de agosto de 2022, en donde se atendieron tres (3) controversias: (1) a quién correspondía la base de datos de *adiestrate.com*; (2) la titularidad del nombre del dominio *adiestrate.com*; y (3) la titularidad de la marca *adiestrate.com*,[13] y después de evaluadas las posturas de las partes,[14] el 12 de mayo de 2023, notificada el 17 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa.[15] Mediante dicho dictamen, el foro primario decretó la disolución de la corporación *ADIESTRATE.COM, Inc.* y determinó que el dominio *adiestrate.com*, la marca del mismo nombre, la base de

---

[12] Apéndice del recurso, págs. 515-516.

[13] Véase, Transcripción de la Prueba Oral (TPO) de la vista celebrada el 9 de agosto de 2022.

[14] Véase, Apéndice del recurso, págs. 553-929; 930-960.

[15] Apéndice del recurso, págs. 1-21. Cabe señalar que, según surge de la página 4 de la *Sentencia* que nos ocupa, en la vista celebrada el 14 de marzo de 2022, Ortiz Berríos anunció que se allanaba a la disolución de la corporación y retiró su reconvención enmendada. A esos efectos, el 31 de marzo de 2022, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* mediante la cual archivó sin perjuicio la referida reconvención.

datos y la información que la configuran eran activos de la mencionada corporación. En particular, el foro *a quo* desglosó las siguientes determinaciones de hechos:

1) El demandante, Jorge L. López [d]e Ayala, es ingeniero químico de profesión. Completó su bachillerato en el Recinto Universitario de Mayagüez en el año 1977 y sus estudios graduados en la Universidad de Pennsylvania en donde obtuvo su maestría en el año 1981 y doctorado en ingeniería química y bioquímica en el año 1983;

2) El Sr. López [d]e Ayala se integró a la facultad del departamento de ingeniería química del Recinto Universitario de Mayagüez en el 1983, donde ocupó el cargo de catedrático asociado hasta diciembre de 1985;

3) El 23 de octubre de 2003, el Sr. López [d]e Ayala registró la corporación de servicios profesionales Verónica Consulting PSC (Verónica Consulting), con número de registro 2,756, en el Departamento de Estado de Puerto Rico;

8) El Sr. López [d]e Ayala era el único accionista de dicha Corporación;

9) Durante el periodo de octubre de 2003 hasta abril de 2005, el Sr. López [d]e Ayala se dedicó a la consultoría profesional;

10) El 19 de octubre de 2004, el Sr. López [d]e Ayala registró el nombre de dominio ADIESTRATE.COM en la página de internet GoDaddy.com, LLC.;

11) El contrato electrónico ejecutado entre el Sr. López [d]e Ayala y GoDaddy.com[,] LLC establece lo siguiente:

> iii. Ownership. You acknowledge and agree that registration of a domain name does not create any proprietary right for you, the registrar, or any other person in the name used as a domain name or the domain name registration and that the entry of a domain name in the Registry shall not be construed as evidence or ownership of the domain name registered as a domain name. You shall not in any way transferred or purport to transfer a proprietary right in any domain name registration or grant or purport to grant as security or in any other manner encumber or purport to encumber a domain name registration.

12) Para el año 2004, el Sr. López [d]e Ayala desarrolló una plataforma para ofrecer cursos por internet;

13) El Sr. López [d]e Ayala comenzó a trabajar en Amgen en abril de 2005 y, a partir de dicha fecha, suspendió sus esfuerzos de mercadear la página de ADIESTRATE.COM;

14) El Sr. López [d]e Ayala y el Sr. Ortiz Berríos se reunieron, previo a la presentación de la propuesta al Colegio de Ingenieros y Agrimensores de Puerto Rico [en adelante CIAPR o Colegio] y discutieron la posibilidad de ofrecer educación continua por internet para dicho colegio

modificando la versión original de la plataforma creada por el Sr. López [d]e Ayala;

15) El 29 de febrero de 2008, el Sr. López [d]e Ayala envió al Sr. Ortiz Berríos por correo electrónico el primer borrador de la propuesta preparada por el Sr. López [d]e Ayala;

16) El 3 de marzo de 2008, el Sr. Ortiz Berríos le devolvió el primer borrador de la propuesta con comentarios;

17) El 13 de abril de 2008, el Sr. López [d]e Ayala envió al Sr. Ortiz Berríos la versión final de la propuesta para el Colegio;

18) Esta propuesta está fechada el 11 de abril de 2008;

19) La renovación mensual de los servidores usados para ADIESTRATE.COM son reembolsados por la Corporación al Sr. López [d]e Ayala como gastos operacionales;

20) La propuesta que se presentó al Colegio identifica a Verónica Consulting como un proveedor de cursos de educación continua en línea a través de su portal de internet de www.ADIESTRATE.com;

21) La página 9 de la propuesta dirigida al Colegio identifica al Sr. Ortiz Berríos como parte del grupo gerencial de Verónica Consulting;

22) El Colegio reconoció a ADIESTRATE.COM como proveedor autorizado de educación continuada con fecha de efectividad de 9 de mayo de 2008 hasta el 9 de mayo de 2013;

23) El 4 de junio de 2008, el Sr. López [d]e Ayala y el Sr. Ortiz Berríos incorporaron ADIESTRATE.COM, INC.;

24) Esta corporación es una íntima y con fines de lucro;

25) El Sr. López [d]e Ayala y el Sr. Ortiz Berríos son los únicos accionistas de la corporación ADIESTRATE.COM, INC.;

26) Las acciones de la corporación ADIESTRATE.COM, INC. están divididas en un 55% para el Sr. López [d]e Ayala y un 45% para el Sr. Ortiz Berríos;

27) Previo al 4 de junio de 2008, entre las partes no realizaron acuerdos por escrito;

28) El 3 de enero de 2009, el Sr. Ortiz Berríos y el Sr. López [d]e Ayala suscribieron un documento titulado "By-Laws" de ADIESTRATE.COM (Revisadas). Dicho documento dispone la participación de capital y el porcentaje de ganancias, entre otros asuntos;

29) Dicho documento establece, además, que las decisiones de impacto significativo para ambos socios deben tomarse por mutuo acuerdo y el consenso de ambos socios;

30) El mencionado documento no dispone en cuanto cómo proceder en caso de un impase entre los socios;

31) El acuerdo pactado entre las partes el 3 de enero de 2009, establece que cualquier distribución de ganancias o dividendos se distribuirá de tal forma que el Sr. López [d]e Ayala reciba el 55% y el Sr. Ortiz Berríos el 45%;

32) La compensación que recibían los socios era una distribución del sobrante después de los gastos por el mismo porcentaje "ownership" o participación de capital;

33) De la compensación destinada a los socios se retenía el 7% de contribución sobre ingresos como si fuesen servicios profesionales;

34) De la compensación destinada a los socios no se retenía seguro social, medicare, Fondo del Seguro del Estado, desempleo, o seguro choferil;

35) Los dueños de la corporación no se consideraban empleados de la misma;

36) Durante el mes de septiembre de 2009, el Sr. López [d]e Ayala solicitó admisión en la competencia auspiciada por Grupo Guayacán llamada "2009 EnterPRIze Business Plan Competition";

37) La idea de negocio de ADIESTRATE.COM fue aceptada para la competencia;

38) ADIESTRATE.COM ganó el primer premio de esta competencia, el cual incluyó $25,000.00;

39) En o antes de 13 de febrero de 2011, el Sr. López [d]e Ayala escribió los términos y condiciones de la página de www.ADIESTRATE.com;

40) Estos términos y condiciones establecen lo siguiente:

> "Todos los materiales contenidos en Adiestrate.com y todos los derechos correspondientes de propiedad intelectual, incluyendo derechos de autor, marcas comerciales, marcas de servicio, nombres comerciales e imagen comercial, son propiedad de Adiestrate.com, Inc. y/o los autores que colaboran en la preparación de los cursos."

41) ADIESTRATE.COM suscribe contratos con instructores que proveen sus cursos para venta en la plataforma y reciben un porciento de las ganancias que generen las ventas de esos cursos;

42) En estos contratos, ADIESTRATE.COM le representa a la otra parte contratante lo siguiente:

   a. Párrafo tercero: Adiestrate.com, Inc. es el dueño exclusivo del portal de internet Adiestrate.com utilizado para este negocio. El instructor no adquiere ningún derecho ni participación capital de la empresa o el portal mediante este contrato;

   b. Párrafo décimo: El contratante mantendrá la plataforma de internet programada para que

cada vez que un cliente se matricule y tome el curso preparado por el instructor, el sistema enviará una comunicación electrónica al instructor. Este debe permitirle al instructor mantenerse informado sobre el número de ocasiones que su curso se vende;

c. Párrafo undécimo: El contratante mantendrá la plataforma de forma de proteger al máximo razonable la propiedad intelectual del instructor. Específicamente, el archivo electrónico del curso no será accesible para los clientes de Adiestrate.com;

d. Párrafo duodécimo: La plataforma de Adiestrate.com provee la oportunidad a las personas que toman el curso de hacer preguntas sobre el material. El instructor se compromete a recibir y contestar las preguntas de forma competente y en un tiempo razonable, nunca tomando más de dos semanas excepto en circunstancias excepcionales.

43) La marca ADIESTRATE.COM está registrada ante el Registro de Marcas del Departamento de Estado de Puerto Rico a favor de ADIESTRATE.COM como dueño;

44) Las tablas de bases de datos que se usa la plataforma se nutren de la información entrada por clientes de ADIESTRATE.COM, INC.;

45) ADIESTRATE.COM, INC. se ha administrado por ambos socios con relativa informalidad.[16]

De igual forma, el foro de origen esbozó las siguientes determinaciones de hechos adicionales:

1) El Sr. López [d]e Ayala, cuando estuvo en Estados Unidos, desarrolló varios inventos, los cuales registró en la oficina de patentes y marcas de esa jurisdicción. También, ha registrado creaciones en la oficina de "Copyright";

2) De octubre de 2004 a febrero de 2005, desarrolló la página de internet de adiestrate.com. A esta incorporó una cuenta de "paypal" personal que había creado antes como método de pago de los servicios que él ofrecía mientras fue consultor;

3) El Sr. López [d]e Ayala integró dicha cuenta de "paypal" personal a la página de adiestrate.com con el fin de cobrar la matrícula de los cursos que se ofrecían en línea. Exhibit 17, Estipulado;

4) A finales del año 2007, el demandante hizo acercamiento al Sr. Ortiz Berríos, demandado, para que lo ayudara a desarrollar su idea de la venta de adiestramientos en línea;

5) El Sr. López [d]e Ayala había reservado y/o registrado varios dominios para utilizarlos eventualmente. Luego de que conversaron e intercambiaron ideas, las partes

---

[16] Apéndice del recurso, págs. 6-9. (Énfasis y citas omitidas).

escogieron *Adiestrate.com* como el dominio, la marca y el nombre de la empresa;

6) La idea de ofrecer cursos en línea como educación continua para diferentes profesionales provino del demandado, Sr. Ortiz Berríos;

7) El Sr. López [d]e Ayala reservó, hace unos años, varios nombres de dominio para su uso futuro, entre los cuales estaba adiestrate.com;

8) Entre el Sr. López [d]e Ayala y el Sr. Ortiz Berr[í]os escogieron el nombre de adiestrate.com para el proyecto o empresa de educación continua cuyo concepto ambos desarrollaban;

9) El Sr. Ortiz Berríos gestionó el registro de la marca adiestrate.com en el Departamento de Estado, a nombre de la Corporación;

10) El Sr. López [d]e Ayala nunca objetó el registro de la marca a nombre de la Corporación ni le informó al demandado, durante su relación de negocios, que sea esa marca era exclusivamente suya;

11) No existe un documento mediante el cual el Sr. López [d]e Ayala transfiere el dominio adiestrate.com a la Corporación que lleva el mismo nombre;

12) En la página de internet "ADIESTRATE.Com -Educación Continua por Internet[-]", se anuncia lo siguiente:

"ADIESTRATE.COM surge en el 2004 como un esfuerzo para crear un sistema de adiestramiento por Internet para aquellas industrias que no tienen un sistema formal de adiestramiento para sus empleados. La página original es desarrollada por la compañía de servicios profesionales, Verónica Consulting, P.S.C., fundada en el 2003 por el doctor Jorge L. López.

En el 2007, el ingeniero Pedro M. Ortiz se une el doctor López y juntos deciden cambiar el enfoque de ADIESTRATE.COM a uno de proveer cursos de educación continua y de interés general a través de internet. En el 2008[,] el ingeniero Ortiz y el doctor López crean la compañía Adiestrate.com, Inc., con el propósito de proveer una sombrilla corporativa dedicada exclusivamente a la educación por internet.

ADIESTRATE.COM queda entonces establecido como un portal de Internet en español, dirigido a los profesionales puertorriqueños que buscan mejorar sus destrezas y aplicar sus conocimientos en su rol de trabajo actual. De esta forma[,] ADIESTRATE.COM provee una alternativa real a la educación tradicional en momentos, en que el factor tiempo puede resultar limitante. ADIESTRATE.COM puede aportar, como alternativa educativa, a mejorar las destrezas y conocimiento del profesional puertorriqueño de forma tal que no altere sus horarios ni su estilo de vida." Exhibit 13, Estipulado [...].

13) Previo a la incorporación de Adiestrate.com el 4 de junio de 2008, cuando aún estaba activa Verónica Consulting, P.S.C., se vendieron tres (3) cursos a través de la página

de internet al Colegio de Ingenieros y Agrimensores de Puerto Rico. Exhibit 2 del demandante;

14) El registro de *Ver[ó]nica Consulting[,] P.S.C.*, registro número 2756, fue cancelado en el Departamento de Estado el 14 de abril de 2014, a las 12:01 a.m. Véase en autos el Anejo A de la *Oposición a Sentencia Sumaria del Demandante Reconvenido y Solicitud de Sentencia Sumaria*, presentada por el demandado el 30 de mayo de 2017, Expediente Tomo 3;

15) La marca "Adiestrate.com" fue registrada en el Departamento de Estado de Puerto Rico el 16 de noviembre de 2010, bajo el nombre de la Corporación ADIESTRATE.COM, INC. El Certificado de Registro refleja el 20 de mayo de 2008 como la fecha en que se usó la marca por primera vez. Exhibit 4, Estipulado;

16) La marca así registrada estaría en efecto (*full force and effect*) por 10 años;

17) El 29 de marzo de 2022, el Sr. López [d]e Ayala presentó una solicitud ante el Departamento de Estado para registrar la marca "Adiestrate.com" a su nombre. Exhibit 6, Estipulado;

18) Al momento de la *Vista*, la referida solicitud se encontraba "sometida";

19) En la planilla corporativa de Adiestrate.com, Inc. para el año fiscal 2015, solo se figuró como activo de la Corporación el efectivo en caja y bancos. Exhibit 18, Estipulado;

20) Las referidas planillas fueron preparadas por el Sr. José Antonio López como especialista, y juramentada por el demandante como Presidente y Tesorero de la Corporación. [Í]d.;

21) El Sr. López [d]e Ayala declaró que las planillas corporativas nunca reflejaron el dominio, marca o derechos de autor de libretos o base de datos como activos de la Corporación;

22) Ante los reclamos formulados como parte del pleito de autos de que se trataban de activos de la Corporación, el 2 de diciembre de 2016, el Sr. López [d]e Ayala registró en la oficina de *Copyright* de los Estados Unidos su autoría sobre un "programa de computadora y código HTLM" para el trabajo que lleva por título "Adiestrate.com Online Learning System". Exhibi[t] 8, Estipulado;

23) El 6 de mayo de 2018, el demandante hizo lo mismo para un "Compilation of Data". Exhibit 9, Estipulado;

24) Según explicó en su testimonio en corte, la base de datos es una recopilación de datos organizada de una forma única y es algo distinto al libreto, que son instrucciones para que la computadora "haga algo", corra un programa.[17]

---

[17] Apéndice del recurso, págs. 9-11. (Énfasis omitido).

En síntesis, el foro apelado concluyó que el dominio *adiestrate.com* fue utilizado primordialmente por la corporación y fue una aportación de López de Ayala para que *ADIESTRATE.COM, Inc.* pudiera hacer negocios y cumpliera con su razón de ser, por lo que era un activo de la corporación. De igual forma concluyó que la marca *adiestrate.com* era un activo de la corporación teniendo su origen por el dominio e inscrita por primera vez el 16 de noviembre de 2010 por *ADIESTRATE.COM, Inc.*

Por último, el foro primario razonó que la base de datos, en particular la información o datos que la configuran, era un activo de *ADIESTRATE.COM, Inc.* El Tribunal de Primera Instancia reconoció que, si bien es cierto que López de Ayala posee derechos de autor respecto a los libretos que escribió para la plataforma tecnológica, utilizada por la corporación, la información y los datos pertenecen a *ADIESTRATE.COM, Inc.* y fue utilizada para el funcionamiento de la empresa en sus negocios.

Inconforme, el 15 de junio de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> Erró el Tribunal de Primera Instancia al apreciar la prueba y concluir que el dominio adiestrate.com es un activo de la corporación Adiestrate.com[,] Inc.

> Erró el Tribunal de Primera Instancia al apreciar la prueba y concluir que la marca adiestrate.com es un activo de la corporación Adiestrate.com[,] Inc.

> Erró el Tribunal de Primera Instancia al evaluar la prueba y, sin tener jurisdicción para ello, concluir que la base de datos y[,] en particular[,] la información que la configura es un activo de la Corporación.

Junto a su recurso, presentó una *Moción en Auxilio de Jurisdicción,* la cual declaramos Ha Lugar mediante *Resolución* del 15 de junio de 2023.

En cumplimiento con nuestra *Resolución* del 20 de junio de 2023, la parte apelante presentó su *Alegato Suplementario* el 7 de

agosto del mismo año. Posteriormente, la parte apelada compareció mediante *Alegato en Oposición* el 25 de septiembre de 2023.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral, procedemos a resolver.

## II

## A

La Ley Núm. 164-2009, *Ley General de Corporaciones*, supra, es el estatuto mediante el cual se atienden las controversias que surjan relativas a la existencia y la vida de las corporaciones en Puerto Rico. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 85 (2021), citando a *Dorado del Mar v. Weber et als.*, 203 DPR 31, 45 (2019). En específico, en el capítulo XIV de la Ley Núm. 164-2009, *supra*, se regula todo lo relacionado a las corporaciones íntimas. El Artículo 14.03 Ley Núm. 164-2009, de dicho estatuto, 14 LPRA sec. 3823, define una corporación íntima como:

> [...]una corporación organizada conforme este subtítulo, cuyo certificado de incorporación contiene las disposiciones requeridas por la sec. 3502 de este título y además dispone que:
>> (1)Todas las acciones emitidas por la corporación, de todas las clases, salvo las acciones en cartera, estarán representadas por certificados y s[o]lo un número específico de personas que no excederán de setenta y cinco (75) serán los tenedores inscritos de las mismas; y
>> (2) [L]a totalidad de todas las clases de acciones emitidas estará sujeta a una o más de las restricciones en la trasferencia que permite la sec. 3622 de este título,
>> (3) [L]a corporación no hará oferta alguna de ninguna clase de acciones que pueda constituir una "oferta pública" dentro del significado de la Ley de Valores Federal de 1933 (15 U.S.C. § 77), según enmendada.
> (b) El certificado de incorporación de una corporación íntima podrá establecer los requisitos para ser accionista, ya sea especificando clases de personas facultadas para ser tenedores inscritos de cualquier clase de acciones de capital o especificando las clases de personas que no estarán facultadas a serlo o ambas cosas.
> (c) Para propósitos de determinar el número de los tenedores inscritos de las acciones de una corporación íntima, las acciones que se posean en común o por personas que están casadas entre sí o por la sociedad

legal de gananciales por ellos compuesta, se entenderán como poseídas por un solo accionista.

Por su parte, el tratadista Carlos Díaz Olivo ha expresado que las corporaciones íntimas "se han caracterizado por ser empresas con un número reducido de accionistas de los cuales se relacionan por vínculos familiares o de amistad". C. Díaz Olivo, *Tratado sobre Derecho Corporativo*, 2da ed. rev., Ed. AlmaForte, 2018, pág. 483. Según el aludido tratadista, las corporaciones íntimas poseen tres (3) características que las diferencian de una corporación regular y estas son:

> 1. Un número reducido de accionistas, íntimamente relacionados por lazos de familia, amistad o negocios;
>
> 2. La participación activa de los accionistas en la administración y la operación de la empresa, y
>
> 3. La ausencia de un mercado para la negociación o la venta de sus acciones. Díaz Olivo, *op. cit.* pág. 485.

Como norma general, la disolución de una corporación será posible cuando de la mayoría de la junta de directores en sesión aprueben una resolución y se envíe por correo a cada accionista con derecho al voto la notificación de la adopción de dicha resolución y la convocatoria para una reunión de accionistas para tomar acción sobre la resolución. Artículo 9.05 de la Ley Núm. 164-2009, 14 LPRA sec. 3705. En el caso de una corporación íntima el procedimiento es distinto, pues como discute el tratadista Díaz Olivo:

> [...]el Artículo 14.11 autoriza la inclusión en el certificado de incorporación de una disposición que faculte a cualquier accionista o al poseedor de un determinado número de acciones, a obtener la disolución de la corporación.
>
> [...]
>
> Es importante destacar que el Artículo 14.11 admite la posibilidad de que cualquier accionista pueda solicitar y lograr la disolución unilateral de la corporación, siempre y cuando en el certificado de incorporación se contemple y se disponga esta posibilidad. Si en el certificado de incorporación nada se dispuso sobre esta posibilidad, la corporación, estará sujeta a la normativa general sobre disolución contenida en el Artículo *9.05* de la Ley para propósitos de la disolución, aunque esté

organizada como corporación íntima al amparo del Capítulo XIV de la Ley. Esto significa, que el accionista inconforme, que desea poner punto final al arreglo corporativo que sostiene con sus demás compañeros accionistas, no podrá hacerlo si no cuenta con el concurso de la mayoría de las acciones en circulación con derecho al voto. Díaz Olivo, *op. cit.* pág. 506.

**B**

La Ley Núm. 169-2009, *Ley de Marcas del Gobierno de Puerto Rico*, según enmendada, 10 LPRA 223 *et seq.*, regula y brinda la protección al derecho de marcas en Puerto Rico. *SLG Bedrosian-Corretjer v. Nestlé et al.*, 205 DPR 1117, 1129 (2020); *Arribas v. American Home*, 165 DPR 598, 604 (2005). El estatuto define marca como todo aquel signo o medio que se utiliza para distinguir en el mercado aquellos productos o servicios de una persona, al igual que cualquier producto o servicio de otra persona, este término también incluye cualquier marca de fábrica, servicio, certificación y colectivos. Artículo 2 (F) de la Ley Núm. 169-2009, 10 LPRA sec. 223 (F).

El derecho a una marca puede ser adquirido de dos formas, mediante el uso de una marca en el comercio o mediante la inscripción de la marca con la intención de utilizarla en un comercio. Artículo 3 de la Ley Núm. 169-2009, 10 LPRA sec. 223a. El requisito de uso de la marca en un comercio hace referencia a un uso legal de buena fe de esta y su cumplimiento varía según sea la categoría de la marca:

(1) En bienes, cuando la marca es colocada de cualquier forma en los bienes; o en sus empaques o contenedores; o en las etiquetas adheridas a los bienes; o en los anaqueles, vitrinas o mostradores; o, si por la naturaleza del bien, se hace impráctico el adherirle una etiqueta con la marca; entonces en documentos asociados con los bienes o su venta; y los bienes son vendidos o transportados en Puerto Rico, y

(2) en servicios, cuando la marca es usada o desplegada en la venta o promoción de los servicios; y los servicios se llevan a cabo en Puerto Rico. *SLG Bedrosian-Corretjer v. Nestlé et al.,* supra, pág. 1131.

**C**

El dominio o *domain name* es "la parte de una dirección de correo electrónico o sitio web en Internet que muestra el nombre de la organización a la que pertenece aludida dirección". Cambridge Dictionary, *Domaine Name*, https://dictionary. cambridge.org/dictionary/english/domain-name (última visita, 26 de agosto de 2024). (Traducción suplida).

Por otro lado, la base de datos es el "[c]onjunto de datos organizado de tal modo que permita obtener con rapidez diversos tipos de información". Diccionario de la lengua española, *Base de Datos*, https://dle.rae.es/base#CiiosqO (última visita, 26 de agosto de 2024). (traducción suplida).

**D**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el

Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

La parte apelante sostiene en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al apreciar la prueba y concluir que el dominio *adiestrate.com* es un activo de la corporación *ADIESTRATE.COM, Inc.* Asimismo, como segundo señalamiento de

error, plantea que el foro primario erró en su apreciación de la prueba al concluir que la marca *adiestrate.com* es un activo de la corporación *ADIESTRATE.COM, Inc.* En su tercer y último señalamiento de error, arguye que el foro *a quo* incidió al evaluar la prueba y, sin tener jurisdicción para ello, concluir que tanto la base de datos como la información que la configura son activos de la mencionada corporación. Por estar relacionados entre sí, discutiremos los errores señalados en conjunto.

Conforme detallamos previamente, es norma reiterada que nuestro ordenamiento jurídico no favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Por tal razón en ausencia de pasión, prejuicio, parcialidad o error manifiesto es el deber de los foros revisores brindar deferencia y respeto a las determinaciones vertidas por los foros primarios. No obstante, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el foro juzgador.

En el caso ante nuestra consideración, la parte apelante arguye que erró el foro primario al apreciar la prueba y al concluir que el dominio, marca y base de datos en controversia eran activos de *ADIESTRATE.COM, Inc.* Luego de examinar sosegadamente el expediente y la transcripción de prueba oral, llegamos a la misma conclusión que el Tribunal de Primera Instancia. Veamos.

En primer lugar, si bien es cierto que de la prueba presentada surge que el dominio *adiestrate.com* fue registrado el 19 de octubre de 2004 por López de Ayala, también es cierto que el *GoDaddy Domain Name Registration Agreement* en su inciso dos (2) (iii) claramente expresa que el registro del nombre del dominio NO crea

un derecho propietario a la persona que lo registró.[18] De igual forma, surge que no fue hasta la creación de *ADIESTRATE.COM, Inc.* que el aludido dominio comenzó a ser utilizado para que la corporación pudiese dar sus servicios y cumpliera con su razón de ser.[19]

Respecto a la marca, la prueba presentada demostró que, desde el año 2008, López de Ayala junto a Ortiz Berríos utilizaron *adiestrate.com* para mercadear su proyecto, que eventualmente se convertiría en *ADIESTRATE.COM, Inc.*[20] Incluso, dicha corporación fue inscrita formalmente ante el Departamento de Estado el 16 de noviembre de 2010, con fecha de expiración en el año 2020.[21] Independientemente de haberse expirado el registro en el año 2020, el apelante no tenía derecho alguno de volver a inscribir la marca de *adiestrate.com* a su nombre, pues según la normativa del derecho de marca en Puerto Rico, la primera vez que fue utilizado el aludido distintivo fue el 11 de abril de 2008 a nombre de *adiestrate.com* para presentar una propuesta de servicios de educación en línea al Colegio de Ingenieros y Agrimensores de Puerto Rico.[22]

Por último, la prueba presentada demostró que, aunque los libretos que utilizó *ADIESTRATE.COM, Inc.* son de la autoría de la parte apelante, la base de datos -en específico la *información* que la configura- son activos de la corporación. Esto es así pues la base de datos estaba nutrida de: (1) la información propia de la corporación, incluyendo la de sus accionistas; (2) los nombres, direcciones, profesiones, números de licenciatura y otros datos de los autores de

---

[18] Véase Apéndice del recurso, págs. 115 y 118.
[19] Véase TPO de la vista celebrada el 9 de agosto de 2022, pág. 110, líneas 4-19; págs. 121-122, líneas 21-8; pág.134, líneas 10-18; pág.148, líneas 7-14; pág. 149, líneas 8-18; pág. 155, líneas 12-19; pág.159, líneas 4-24; pág.160, líneas 21-25.
[20] Véase Apéndice del recurso, págs. 1070-1083 y 1109; TPO de la vista celebrada el 9 de agosto de 2022, págs. 81-82, líneas 2-14; pág. 84, líneas 1-24; pág. 85, líneas 1-7; págs. 110-111, líneas 23-23; págs. 142-143, líneas 11-13; pág. 144, líneas 9-4; págs.147-148, líneas 4-14; págs. 149-150, líneas 8-12; págs. 151-152, líneas 16-18.
[21] Véase Apéndice del recurso, págs. 971-973.
[22] Íd., págs. 1070-1083.

los cursos que ofrecía la corporación y los usuarios que tomaban los cursos; y (3) los cursos que se ofrecían.[23]

Por todo lo antes expuesto, y luego de examinar sosegadamente el expediente y la transcripción de la prueba oral, determinamos que el foro primario no incidió en su determinación. En ausencia de pasión, perjuicio, parcialidad o error manifiesto, concluimos que el **dominio**, **marca** y **base de datos** son activos de *ADIESTRATE.COM, Inc.*

**IV**

Por las razones que anteceden, dejamos sin efecto la paralización de los procedimientos y *confirmamos* el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] Véase, TPO de la vista celebrada el 9 de agosto de 2022, pág. 94, líneas 15-25; pág. 120, líneas 8-22; pág. 121, líneas 4-25; págs. 162-163, líneas 17-16; pág. 165, líneas 3-25; pág. 166, líneas 3-23; págs. 167-168, líneas 2-10.